IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FAITH JEANETTE K.,[1]    )
          )
    **Plaintiff,**  )
          )  **CIVIL ACTION**
**v.**         )
          )  **No. 21-2415-JWL**
**KILOLO KIJAKAZI,**   )
**Acting Commissioner of Social Security,** )
          )
    **Defendant.**  )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I. Background

Plaintiff protectively filed an application for DIB on January 16, 2019.  (R. 12, 190, 193).  After exhausting administrative remedies before the Social Security

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims both the mental and physical residual functional capacity (RFC) assessed by the ALJ are not supported by substantial evidence, and his step five findings regarding past relevant (PWR) are erroneous.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity (SGA) since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.   Discussion

Plaintiff argues all the record medical opinions[2] from mental health professionals "indicate [Plaintiff's] mental impairments impacted her ability to perform work-related activities.  There are no opinions suggesting [her] mental impairments had no impact on her work functionality. The ALJ nevertheless erroneously concluded that she had no limitations from a mental perspective."  (Pl. Br. 8-9).  She argues, "These five opinions, consistent with each other, should have been afforded persuasive weight."  Id. at 9.  She

---

[2] The court recognizes that the evaluations performed by state agency physicians and psychologists are properly called prior administrative medical findings.  20 C.F.R. § 404.1513(a)(5).  However, they are evaluated in the same manner and by the same standards as medical opinions and are commonly called medical opinions.  20 C.F.R. § 404.1520c.  The court follows the common practice herein.

argues that despite these medical opinions the ALJ "denied the existence of a severe

mental impairment, … did not present even a single limitation in the [mental] RFC, [and

thereby implied Plaintiff] could understand and execute detailed work, could socialize

without restriction, and could maintain pace without restriction."  Id. 10.

Plaintiff argues the ALJ discounted "her mental health limitations because she

attempted to work and could perform some activities of daily living, [but t]hese facts are

not substantial evidence to support findings in conflict with [the] five opinions."  (Pl. Br.

10).  This is so, in Plaintiff's view, because the mental health professionals were aware of

Plaintiff's activities of daily living and her work status, and because the work was part

time work, but not the 30 hours a week of which the ALJ suggested she was capable.  Id.

at 10-11.  She argues, "The relevant question is whether [Plaintiff] has the ability to work

on a regular and continuing basis, i.e., 8 hours a day for 5 days a week."  Id. 11 (citing

Garcia v. Barnhart, 188 F. App'x 760, 762 (10th Cir. 2006); Luna v. Colvin, No. CIV.A.

13-1289-JWL, 2014 WL 5598248, at *6 (D. Kan. Nov. 4, 2014)).

Plaintiff also argues her "activities of daily living do not undercut her allegations"

of mental limitations and the "generally normal examination findings" upon which the

ALJ relied were not made by a mental health professional, but by her treating physician.

Id. 12.  She argues it was improper for the ALJ to rely upon a lack of mental health

treatment because the mental health professional's opinions "supersede" such a finding

and the ALJ did not consider the reason for the lack of mental health treatment.  Plaintiff

argues the ALJ's findings regarding her mental impairments "are unsupported by the

record, including each [medical] opinion … and it was improper for the ALJ to substitute

his own medical expertise" for that of the mental health professionals.  Id. 13.  Finally, she argues the ALJ did not include "limitations based on his own findings that [Plaintiff's] depression and neurocognitive disorder were medically determinable impairments," and did not consider whether additional limitations would preclude past relevant semi-skilled or skilled work.  (Pl. Br. 14-15).

As to the ALJ's assessment of Plaintiff's physical RFC, Plaintiff argues the ALJ rejected three of the four medical opinions suggesting physical limitations and "[t]he one opinion the ALJ purportedly found persuasive does not support his RFC."  Id. at 17.  She argues, "no opinions support[ed] the ALJ's conclusion [Plaintiff] could perform medium work," the state agency physicians limited her to light work, her treating physician, Dr. Michalski, limited her to less than sedentary work, and Dr. Uddin, found her limited "to work as tolerated and questioned her ability to complete a full work-day."  Id.

Plaintiff argues an "ability to perform medium work at a full-time level is not supported by any medical professional, nor the record as a whole," id., and "it was unreasonable for the ALJ to find her capable of performing of [sic] medium work."  Id., 18 (citing Hamlin v. Barnhart, 365 F.3d 1208, 1223 (10th Cir. 2004) ("[E]ven if there were no diagnostic tests showing Mr. Hamlin was unable to lift up to fifty pounds, the absence of such evidence is not evidence. This is particularly true in view of the fact that no treating or examining physician has ever stated that Mr. Hamlin was capable of lifting so much weight.")).

The Commissioner responds that "the ALJ's RFC finding was not an unreasonable one." (Comm'r Br. 6).  She argues,

> Plaintiff demonstrated the ability to perform semi-skilled, medium to heavy work as a CNA (at and below the SGA level) despite longstanding impairments, both before and long after the alleged onset of disability. Moreover, Plaintiff's back problems were treated conservatively, her own doctor recorded few abnormal clinical signs, imaging did not reflect substantial spinal worsening over time, and she did not seek treatment for her mental impairments at all despite seeking ongoing care for her physical issues. It was within a reasonable zone of choice for the ALJ to resolve the evidentiary conflicts as he did, even if another fact finder could have weighed the evidence differently.

(Comm'r Br. 6). She argues, Plaintiff's "demonstrated ability to work as a CNA for up to eight-hour shifts, up to 30 hours per week, both before and after the alleged onset of disability despite her longstanding back problems suggested she was capable of medium work." Id. 7.

The Commissioner argues Plaintiff's treatment for her physical impairments was conservative, id. at 8, and "the objective medical evidence did not show significant worsening during the relevant period, so as to warrant more extensive treatment." Id. 9. She points to record evidence supporting the ALJ's RFC finding and discounting the contrary medical opinions. Id. at 9-11. The Commissioner points out, "the RFC determination [is] an administrative finding reserved for the ALJ, … not a medical source. There is no requirement that an RFC track or be based on a medical opinion." Id. 11 (citing 20 C.F.R. § 404.1546(c), Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004)).

The Commissioner also argues the ALJ did not err assessing Plaintiff's mental RFC. Id. 12. She argues, "even giving Plaintiff the benefit of the doubt and assuming some mental limitations were warranted, the outcome would not change. The record

does not support inclusion of mental limitations that would eliminate the unskilled jobs identified by the vocational expert." Id.  She points out "Plaintiff's medical records did not reflect any treatment for mental health issues prior to the alleged onset of disability." Id.

She argues Plaintiff's claim of greater limitations is undermined by evidence she continued to work at her semi-skilled job as a CNA.  (Comm'r Br. 13).  She cites Cowan v. Astrue, 552 F.3d 1182, 1191 (10th Cir. 2008) for the proposition that the fact an individual has previously worked with identical impairments suggests those conditions would not currently prevent work.  Id. at 7, 14.  The Commissioner argues:

> Coupled with her ongoing performance of semi-skilled work, the fact that Plaintiff neither sought nor received any mental health treatment, did not report any mental health complaints to her primary care provider even though she saw him many times for physical issues, and was not referred for any mental health care or prescribed any treatment, undermined Plaintiff's allegations of significant, much less disabling, mental limitations.

Id. 14.  She points out Plaintiff's primary care physician sometimes included depression in her medical history, but "never identified abnormal mental status findings, prescribed medication or counseling, referred her to any specialists, or suggested that she had mental work limitations."  Id.

The Commissioner acknowledges the ALJ found all the mental health professionals' opinions unpersuasive but argues RFC assessment is reserved to the ALJ who properly discounted the opinions "[a]nd Plaintiff's demonstrated ability to perform semi-skilled work and absence of mental health treatment undermined the various conclusions that she was more limited."  Id. at 17.  She argues that even if Plaintiff were

"limited to work involving only simple tasks or instructions (as several sources opined),"

she is still able to perform the unskilled, medium work testified by the vocational expert

(VE) and adopted by the ALJ.  (Comm'r Br. 17).

### A.    The ALJ's Relevant Findings

The ALJ found Plaintiff worked at SGA

> levels as a CNA during the fourth quarter of 2019 and the first quarter of
> 2020 (Exhibit 13D).  She also worked during most of the rest of the period
> at issue but just not at SGA levels (See Exhibits 13D; 8E; and 15E).  It
> appears that the claimant stopped working as a CNA due to the COVID-19
> pandemic (See Exhibit 13F/3).

(R. 15).  He found "it is not necessary to determine whether that work activity constitutes

disqualifying substantial gainful activity because there is a basis for denying the

claimant's application at a later step of the sequential evaluation process, as explained in

more detail below."  Id.

He found Plaintiff has a severe combination of impairments including

degenerative disc disease with disc protrusion at the T11-T12 level, and facet

osteoarthritis at the L3-L4 and L5-S1 levels, and obesity. The ALJ found Plaintiff has

other medically determinable impairments which are not severe within the meaning of the

Act including GERD (gastroesophageal reflux disease), neurocognitive disorder, and

major depressive disorder but that "the medical record shows that these impairments do

not cause more than minimal functional limitation on the claimant's ability to work."  Id.

He specifically discussed Plaintiff's mental impairments, stating:  "The claimant's

medically determinable mental impairments of depression and neurocognitive disorder,

considered singly and in combination, do not cause more than minimal limitation in the

claimant's ability to perform basic mental work activities and are therefore non-severe" (R. 15), because Plaintiff has only mild limitations in each of the four broad mental functional areas, the "paragraph B" criteria, when applying the Commissioner's Psychiatric Review Technique "and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." Id. at 17.

In reaching this conclusion, the ALJ evaluated the persuasiveness of the medical opinions of each of the mental health professionals. Id. 16-17. He found Dr. Pulcher's opinion unpersuasive because it was rendered outside the relevant period and because his "opinion that the claimant was limited to simple instructions is inconsistent with his own findings that showed the claimant's ability to readily solve addition, subtraction, multiplication, and division problems; ability to spell the word world both forward and backwards, and ability to recall both parts of a two-part instruction." Id. 16 (citing Ex. 2F). He explained his reasons for finding Dr. Koeneman's opinion unpersuasive:

> Dr. Koeneman noted the claimant appeared to give a minimal level of effort during testing. These findings are inconsistent with the claimant's generally normal examination findings during primary care provider visits, and the general lack of mental health treatment in the record. Thus, while Dr. Koeneman's opinion limiting the claimant to understanding simple instructions, is somewhat consistent with his mental status findings. [sic] Overall, his opinion is unpersuasive because it is inconsistent with the claimant's ongoing activities of daily living including performing personal care tasks independently, driving, shopping in stores, and working between sixteen to thirty hours per week as a CNA (Exhibit 5F/1 and 13E). These tasks fully require the claimant to be able to do more than simple tasks. Indeed, caring for others in her job capacity as CNA reasonably requires more than simple tasks.

Id. The ALJ explained his evaluation of Dr. Neufeld's opinion:

10

> In September 2020, Dr. Neufeld also commented on the claimant being a
> poor historian, that she provided limited responses in a "highly vague,
> uncertain, and hesitant manner" (Exhibit 13F).  Accordingly, on
> examination, the claimant's memory was described as poor, and that she
> required frequent prompts due to being highly distractible.  Dr. Neufeld
> reported the claimant presented as mentally confused, with both unclear and
> disorganized thought processes.  While the claimant endorsed symptoms of
> depression with anxious distress, Dr. Neufeld observed the claimant's
> mood disturbance did not appear to adequately explain the nature and
> severity of observed cognitive deficits (Exhibit 13F/5).  Consequently, Dr.
> Neufeld diagnosed the claimant with an unspecified neurocognitive
> disorder and major depressive disorder, with anxious distress (Exhibit 13F).
> Based on his examination findings, Dr. Neufeld opined the claimant was
> not capable of following even one to [two] step instructions and not capable
> of maintaining even occasional interactions with the public, co-workers,
> and supervisors (Exhibit 13F/5).  Dr. Neufeld's opinions are wholly
> unpersuasive because they are inconsistent with the claimant's own reports
> of activities of daily living that require more than 1-2 step tasks including
> being able to live by herself, to performing [sic] personal care tasks, to
> cooking, cleaning, and other household chores, and to drive.  Moreover, her
> ability to sustain her job as a CNA shows that she also was able to work
> well with others.

(R. 16-17).

The ALJ noted that the state agency psychological consultants, Dr. Duclos and Dr.

Shafer, found Plaintiff moderately limited in the two broad mental functional areas of

understanding, remembering, and applying information, and in concentration,

persistence, and maintaining pace but only mildly limited in the other two broad areas.

Id. 17.  He went on to explain:

> Although their opinions are consistent with Dr. Neufeld's prior 2017
> opinion and Dr. Koeneman's 2019 opinions in mental functioning, their
> opinions are unpersuasive because the record does not support these
> limitations.  As discussed above, the claimant did in fact exhibit significant
> cognitive deficits during her examinations.  However, she did not exhibit
> any of those types of findings during examinations with her primary care
> provider, nor did she report any of the same symptoms.  Indeed, the
> claimant admitted to not having any mental health treatment.  Moreover,

despite her complaints, in addition to no formal mental health treatment, she has not required any inpatient hospitalization or admissions for mental health crisis. The undersigned finds Drs. Koeneman['s] and Neufeld's notes that the claimant provided limited answers and was vague as more persuasive in that she did not have more than minimal limitations in her mental functioning.

(R. 17).

The ALJ assessed Plaintiff with the RFC for "medium work as defined in 20 CFR 404.1567(c)" and found she "can frequently climb ramps, stairs, ladders, ropes, and scaffolds. She can frequently stoop, kneel, crouch, and crawl." Id. at 18 (finding no. 5, bold omitted).

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of" her "symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons discussed" in his decision. Id. 19. In reaching that decision, he discussed some inconsistencies in Plaintiff's allegations:

She reported that she used to be able to drive, but testified that she no longer drives (Exhibits 1E; 13E; and hearing testimony). She reported that her daughter has to remind her to pay bills and perform personal care tasks, but that she does not need reminders for taking her medications. She reported she is able to be social with others including going out to dinner and watching football games. She also reported the ability to work up to 30 hours per week as a CNA (Exhibits 5F; 7F; and 13F).

Despite her complaints, her activities of daily living are not suggestive of her having significant physical limitations. For example, the claimant admits the ability to perform personal care tasks independently (Exhibits 1E and 13E). The claimant admits the ability to cook meals, shop in stores, drive, and perform household chores. Most notably, the claimant continued to work as a CNA for a large portion of the relevant period. Overall, her ability to engage in these activities is not supportive of her allegations that she cannot engage in any physical activity. Her activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations that preclude her from work activities. Although the

claimant may not be able to engage in all of the activities that she did in the past and it may take her longer to perform the task, she is more active than [she] would be if all her allegations were consistent.

(R. 19).

The ALJ summarized the medical evidence in his decision.  Id. at 19-21.  He noted that despite Plaintiff's reports to Dr. Michalski of debilitating limitations from lumbar strain and degenerative disc disease, "clinical findings belied her subjective reports."  Id. He noted that objective data including minimal retrolisthesis and mild facet joint degenerative changes "is only somewhat consistent with her allegations."  Id. at 20.  He noted, "Although these results are consistent with the claimant's diagnoses, nothing in these reports demonstrates disabling functional limitations."  Id.

The ALJ noted other clinical findings which "further belie the claimant's allegations of disability," including the report of an examination by Dr. Uddin in which he "reported the claimant exhibited left shoulder joint tenderness to palpation and straight leg raise test slightly positive on the left, but she otherwise exhibited a normal gait/ station, intact strength with fine motor movements, the ability to bend and squat without difficulty, and slightly reduced range of motion in her lumbar spine and shoulders."  Id. (citing Exhibit 7F/4).  The ALJ noted Plaintiff had another examination with Dr. Ellsworth with a report to a similar effect.  Id.  He explained:

Dr. Ellsworth noted the claimant complained similarly of a history of low back pain that radiated to her left leg.  Similar to Dr. Uddin's findings, Dr. Ellsworth also found the claimant exhibited more sensitivity to straight leg raise on the left than right, and that her gait favored her left side (Exhibit 14F/5).  He also found the claimant complained of left hand pain with some signs of diminished grip strength.  However, Dr. Uddin found the claimant's station was stable, that she did not require an assistive device,

13

> that she exhibited no asymmetrical reflex, sensory, or motor deficits, and
> that no inflammatory change [sic] (Exhibit 7F/5).  She did exhibit mild
> difficulty squatting and arising from that position and mild difficulty
> hopping, but she exhibited no difficulty with heel toe walking and no
> difficulty getting on and off the exam table.

(R. 20).

The ALJ also noted Plaintiff told Dr. Uddin she had had physical therapy and had been given orthopedic injections for her lower back which provided 50% relief but that she was no longer receiving such treatments although Dr. Michalski was providing pain management treatment.  Id.  The ALJ found, "the conservative nature and limited amount of treatment she has undergone is not supportive of her allegations of disabling limitations."  Id.  The ALJ also noted Plaintiff is obese and he had "considered the combined effects of the claimant's obesity with her other impairments when reaching the findings" in his decision.  Id. at 21.

The ALJ also explained how persuasive he found each physician's medical opinion.  The state agency medical consultants, Dr. Sampat and Dr. Weis, opined that Plaintiff was able to perform a range of light work.  (R. 69-71, 89-91).  The ALJ explained why he found those opinions unpersuasive:

> they are inconsistent and unsupported by the record as a whole.  Moreover,
> her ability to continue to work as CNA during the relevant period, which as
> discussed below is a medium exertion level position, is also inconsistent
> with their opinion that the claimant could perform no more than light
> exertion level work.  Furthermore, the pattern of clinical findings and
> conservative treatment of medications to control her pain, also do not
> support a reduction to light work.  In fact, the claimant testified that she
> was able to lift more than fifty pounds while working as a CNA.  On the
> other hand, the claimant may indeed have some postural limitations
> secondary to her lumbar degeneration.  Accordingly, the undersigned
> further limited the claimant's ability to perform postural functions and to

14

tolerate environmental hazards, which require more limitations than those
opined by Drs. Sampat and Weis.

(R. 21).

The ALJ explained his evaluation of Dr. Uddin's opinion:

Based on his examination, Dr. Uddin opined the claimant should be able to
sit, walk and/or stand "in increments as tolerated" (Exhibit 7F). Dr. Uddin
noted that the claimant imaging [sic] does evidence some disc disease, but
that it did not significantly limit her day-to-day (Exhibit 7F/5). Dr. Uddin's
opinion is persuasive because it is consistent with the claimant's
conservative management of her pain with only medications, and her
ongoing reports of activities of daily living. While the claimant may indeed
have ongoing pain, as Dr. Uddin noted, she is not actively engaged in
physical therapy, and the claimant's physical examination findings support
his opinions.

Id. 21-22.

Dr. Michalski provided a letter opining Plaintiff is unable to work; id., at 581-82;

along with a "Physician's Residual Functional Capacity Form" opining regarding

Plaintiff's physical limitations. Id. at 583-85. The ALJ explained why he found the letter

unpersuasive:

Drs. [sic] Michalski's opinion is unpersuasive because opinions regarding
the ability to work are reserved to the Commissioner, and as such are not
entitled to any special significance (20 CFR 404.1527(d)). Furthermore,
Dr. Michalski's opinion is inconsistent with his own reports that the
claimant's lumbar degeneration has generally been treated conservatively
with medication. He did note that the claimant tried therapy and injections
in the past, but there is no evidence of such treatment during the relevant
period. Moreover, his opinion is also inconsistent with his report that the
claimant has been able to work "intermittently as a nurse aide-CNA for a
period of fifteen [(15)] years["] all through the time he claims she is unable
to work (Exhibit 15F).

Id. 22 (close quotation missing in original).  He characterized Dr. Michalski's RFC

opinion as containing extreme limitations and found it unpersuasive for the same reasons,

finding the limitations:

> are unsupported by and inconsistent with the clinical findings in the record,
> including Dr. Michalski's own unremarkable findings (Exhibits 4F; 8F;
> 10F; 12F; and 16F), and the claimant's conservative treatment for her
> condition.  Indeed, in June 2020, shortly after Dr. Michalski completed the
> forms, he noted the claimant exhibited tenderness over the left knee, but
> added no additional examination findings (Exhibit 16F/6).

(R. 22).  He concluded, "the claimant's allegations of total disability are out of proportion

with the medical and other evidence of record."  Id.

The ALJ found Plaintiff has the ability to perform her past relevant work, both as a

CNA[3] and as a Shipping and Receiving Clerk, "as actually and generally performed."  Id.

at 23.

Because there are a significant number of other jobs available in the national

economy to an individual with the RFC assessed, the ALJ made an alternative step five

finding.  He found that on Plaintiff's alleged onset date she was an "individual closely

approaching advanced age," during the pendency of her claim entered the category of

"advanced age," and she has a "limited education," as those terms are defined in the

regulations.  Id.  Using Medical-Vocational Rules 203.12 and 203.19 as a framework and

based on VE testimony the ALJ concluded Plaintiff is also able to perform other medium

---

[3] The court notes that two different times on the page cited the ALJ referred to "this work
as a CAN" and "past relevant work as CAN," notes that the court's word processing
program on multiple occasions while preparing this decision has "autocorrected" CNA to
CAN, and finds these to be typographical errors in the ALJ's decision.

work in the economy represented by occupations as a lab equipment cleaner, an order

filler, and a sandwich maker.  Id.

### B.    Analysis

Plaintiff's argument regarding both the ALJ's mental and physical RFC

assessment appears to rely upon a misunderstanding of the law.  She appears to believe

that there must be a medical opinion upon which the ALJ must rely, at least in part, to

make an RFC assessment.  That is not the case.  Although an ALJ is not an acceptable

medical source qualified to render a medical opinion, "the ALJ, not a physician, is

charged with determining a claimant's RFC from the medical record."  Howard, 379 F.3d

at 949.  "And the ALJ's RFC assessment is an administrative, rather than a medical

determination."  McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing

Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)).  Because

RFC assessment is made based on "all of the evidence in the record, not only the medical

evidence, [it is] well within the province of the ALJ."  Dixon v. Apfel, No. 98-5167, 1999

WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a).  Moreover, the

final responsibility for determining RFC rests with the Commissioner.  20 C.F.R.

§§ 404.1527(e)(2), 404.1546.

"[T]here is no requirement in the regulations for a direct correspondence between

an RFC finding and a specific medical opinion."  Chapo v. Astrue, 682 F.3d 1285, 1288

(10th Cir. 2012) (citing Howard, 379 F.3d at 949); Wall, 561 F.3d at 1068-69).  The

narrative discussion required by SSR 96-8p to be provided in an RFC assessment does

not require citation to a medical opinion, or even to medical evidence in the

17

administrative record for each RFC limitation assessed.  Castillo v. Astrue, No. 10-1052-JWL, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011).  "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment."  Id.  See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011).  There is no need in this case, or in any other, for the Commissioner to base the limitations in her RFC assessment upon specific statements in medical evidence or medical opinions in the record.

The Commissioner has provided eleven examples of the types of evidence to be considered in making an RFC assessment, including:  medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, attempts to work, need for a structured living environment, and work evaluations.  SSR 96-8p, 1996 WL 374184, at *5 (SSA July 2, 1996).  The ALJ is also required to consider Plaintiff's allegations of limitations resulting from symptoms.  Id., see also Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009) (an ALJ's credibility determination is intertwined with his RFC assessment).

Based on the law as noted above, it is not error for an ALJ to assess an RFC which is different than the limitations opined by all the medical opinions.  To be sure, the more medical opinions agree with one another, the greater the potential that a contrary RFC assessment will be found to be unsupported by the record evidence.  But, the real question for the court regarding assessment of medical opinions is whether the ALJ

applied the correct legal standard in evaluating their persuasiveness, and whether the

ALJ's evaluation of each of them is supported by substantial evidence—"such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

Perales, 402 U.S. at 401.  Plaintiff does not argue the ALJ did not apply the correct

standard, and the record is clear that he did.  The court now considers whether the ALJ's

persuasiveness evaluation is supported by the record evidence.

The ALJ found Dr. Uddin's opinion persuasive.  (R. 22).  The ALJ found every

other medical opinion unpersuasive, and except for Dr. Pulcher's opinion, one of the

reasons he gave for doing so was because the opinion was inconsistent with Plaintiff's

continuing work into the second quarter of 2020 as a CAN, which is semi-skilled,

medium work admittedly requiring occasional lifting of fifty pounds (R. 44, 45) (lift and

carry more than 50 pounds in 2019-2020 working at Sheridan Overland Park, lift and

carry over 50 pounds in 2015-2019 working at Alpha Staff Group), and in which Plaintiff

told Dr. Koeneman she worked from 16 to 30 hours a week.  (R. 16-17,[4] 21-22; see also,

R. 463) ("her hours vary from sixteen to thirty a week").  Without doubt this reason is

supported by "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Perales, 402 U.S. at 401.

---

[4] Although the ALJ did not specifically state the opinions of the psychological
consultants, Dr. Duclos and Dr. Shafer, were inconsistent with Plaintiff's work as a CNA,
he found "their opinions are unpersuasive because the record does not support these
limitations" (R. 17), and one of the reasons the record does not support these limitations
is Plaintiff's continuing work as a CNA as the ALJ noted again and again throughout his
opinion.  Id., 16, 19, 21, 22.

Moreover, the ALJ provided other reasons to find the opinions unpersuasive.  He noted Dr. Pulcher's opinion was rendered outside the relevant period and his limitation to simple instructions was inconsistent with the abilities she demonstrated during Dr. Pulcher's examination.  The record evidence supports the ALJ's reasons.  The ALJ also discounted Dr. Koeneman's opinion because the psychologist noted Plaintiff gave a minimal level of effort and because his opinion is inconsistent with Plaintiff's generally normal examination findings from her primary care provider and her general lack of mental healthcare treatment.  (R. 16).  Plaintiff argues that her primary care provider provided only physical healthcare, so his generally normal findings are unremarkable. But what she misses is that a healthcare provider has a duty to address any healthcare issue to his patient and that medical doctors are authorized to treat mental health concerns they perceive in their patients.  Therefore, it is at least somewhat probative that Dr. Michalski did not note any mental problems in his examinations of Plaintiff, did not prescribe medication to address her alleged mental issues, and did not recommend mental health treatment.  Thus, the ALJ's other reasons for discounting Dr. Koeneman's opinion are also supported by the record evidence.  The ALJ's evaluation of Dr. Duclos's and Dr. Shafer's opinions relied upon these same inconsistencies with the findings of Plaintiff's primary care provider, failure to report the same symptoms to her primary care provider, and no mental healthcare treatment.  Id. 17.  Again, these findings are supported by the record evidence.

Finally, the ALJ found that Plaintiff's provision of minimal effort in response to Dr. Koeneman, id. 465, and providing limited responses in a "highly vague, uncertain,

and hesitant manner" to Dr. Neufeld, id. 568, suggested to the ALJ "that she did not have more than minimal limitations in her mental functioning."  Id. at 17.  The ALJ's rationale for discounting the opinions of the mental healthcare professionals is supported by record evidence.

Plaintiff argues that there is no evidence she consistently worked thirty hours a week as a CNA and "[t]he relevant question is whether [she] has the ability to work on a regular and continuing basis, i.e., 8 hours a day for 5 days a week."  (Pl. Br. 11) (citing Garcia v. Barnhart, 188 F. App'x 760, 762 (10th Cir. 2006); Luna v. Colvin, No. CIV.A. 13-1289-JWL, 2014 WL 5598248, at *6 (D. Kan. Nov. 4, 2014)).  The real question, however, as recognized in the cases cited by Plaintiff is whether the claimant is able to work on a regular and continuing basis and at the level of substantial gainful activity. Garcia, 188 F. App'x at 762 (citing Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989) ("pre-SSR 96–8p case directing award of benefits '[b]ecause capability to work only a few hours per day does not constitute the ability to engage in substantial gainful activity.'"); Luna, 2014 WL 5598248, at *6 ("unable to work consistently on a day-in, day-out basis.").  Here, as the ALJ noted, the record reveals that Plaintiff worked part time as a CNA at the level of substantial gainful activity during the fourth quarter of 2019 and the first quarter of 2020.  (R. 15) (citing Ex. 13D).  If a claimant is "able to engage in substantial gainful activity," she will be found not disabled.  20 C.F.R. § 404.1571. "[W]ork may be substantial even if it is done on a part-time basis."  Id. § 404.1572(a). The ALJ need not prove Plaintiff worked 30 hours a week, the burden of proof is on Plaintiff.  However, the ALJ properly relied upon Plaintiff's report to Dr. Koeneman, on

her testimony and other statements, and on the record evidence of substantial gainful activity.  This is record evidence supporting his findings Plaintiff is able to work as a CNA at the level of SGA, that she is able to work at the medium exertional level, to lift and carry fifty pounds occasionally, and that she is mentally able to perform at least to the semiskilled level of SVP 4.  Plaintiff, who has the burden of proof through this step (four) of the sequential evaluation process does not point to record evidence compelling a contrary finding.  While the court may question whether the record supports finding Plaintiff has the mental ability to work at the skilled level of a shipping and receiving clerk, the evidence above is sufficient to affirm the ALJ's findings Plaintiff has the ability to perform past relevant work as a CNA, demonstrating she is not disabled.

Although the court has already found the ALJ's decision is supported by substantial record evidence, it believes it is appropriate to further address Plaintiff's allegations of error in assessing physical limitations.  In discounting the opinions of the state agency medical consultants and of Dr. Michalski the ALJ also explicitly relied upon Plaintiff's continuing work as a CNA.  Moreover, he also relied on the evidence of conservative treatment.  Both of those reasons are supported by the record evidence as cited by the ALJ.  Although Plaintiff appeals to other evidence from which one might conclude differently, the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would

justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Finally, Plaintiff's argument the ALJ erred in evaluating Dr. Uddin's opinion also fails. She argues Dr. Uddin's opinion does not support the ALJ's finding she can perform medium work because he opined only that she "could sit, walk, and/or stand 'in increments as tolerated' and could lift/carry objects 'as tolerated.'" (Pl. Br. 10) (quoting R. 479). Plaintiff's argument misunderstands the ALJ's extensive reliance on Plaintiff's continuing work as a CNA—even to the extent of SGA. Clearly the ALJ relied on this evidence Plaintiff was able to tolerate such work despite her contrary protestations.

While Plaintiff's arguments of error in finding she can perform past relevant work as a shipping and receiving clerk may have some persuasive value, the discussion above reveals she has not carried her burden to prove error in the ALJ's finding she is able to perform her past relevant work as a CNA at SGA level. Therefore, the court finds it must affirm the decision she is not disabled within the meaning of the Act.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated October 12, 2022, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**